IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

CINDY PENNINGTON )
)
v. ) No. 2:08-0020
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

# REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 15). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 11), and for the reasons given below, the undersigned recommends that plaintiff's motion be **DENIED**, and that the decision of the SSA be **AFFIRMED**.

## I. Introduction

Plaintiff filed her DIB application on December 8, 2004, alleging disability since August 12, 2003, due to carpal tunnel syndrome and migraine headaches (Tr. 33, 51). Her application was denied at the initial and reconsideration stages of agency review (Tr. 32-

1

42), whereupon plaintiff requested a *de novo* hearing by an Administrative Law Judge ("ALJ"). The hearing was held on May 17, 2007 (Tr. 379-97). Plaintiff was represented by counsel, and testimony was received from both plaintiff and an impartial vocational expert. At the conclusion of the hearing, the ALJ took the case under advisement. On July 11, 2007, the ALJ issued a written decision in which he found that plaintiff was not disabled under the Act (Tr. 11-21). The decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of August 12, 2003 through her date last insured of December 31, 2006 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: migraine headache disorder and history of bilateral carpal tunnel release surgeries (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment of combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work except for no more than frequent (as opposed to repetitive) gross and find manipulation bilaterally.

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on November 8, 1952 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from August 12, 2003, the amended alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(g)).

(Tr. 16-17, 19-21)

On December 28, 2007, the SSA's Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-9), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Plaintiff was 54 years old at her May 2007 hearing. Though she has been treated both conservatively and surgically for carpal tunnel syndrome, her argument in this court revolves entirely around her migraine headache syndrome. The medical and testimonial record regarding plaintiff's migraine headaches was summarized as follows in defendant's brief (Docket Entry No. 15 at 3-4), with some modification by the undersigned:

The record indicates that Plaintiff was treated with a variety of prescribed

3

medications and dosage adjustments to control her migraine headaches. Neurologist and psychologist, Dr. Donovan, wrote in August 2000 that he believed Plaintiff's headaches were related to an underlying depressive disorder from losing her job due to the plant closing, her son's divorce, and having a wrecked vehicle. He prescribed Paxil, Advil, and Maxalt[1] (Tr. 359). By October 2000, her headaches had improved (Tr. 356).

In November 2003, neurologist, Dr. LaLonde told Plaintiff that when she had a headache, she needed to take the prescribed medicine immediately, rather than wait two to three hours later, as she had been doing (Tr. 260-61). In May 2004, she reported that after having only one headache per month, she had 16 in March (Tr. 258). In July 2004, at her last visit to Dr. LaLonde, she reported that she had no side effects from her medications and that, in general, she was "quite pleased with the HA [headache] management" (Tr. 257). Plaintiff related that she had only three headaches in two months, and one or two were quite mild. Id.

Four years after her last visit, in December 2004, Plaintiff returned to Dr. Donovan where she reported having nine headaches that month, 13 in November, and 17 in October (Tr. 352). Again, Dr. Donovan opined that Plaintiff had an underlying anxious-depressive disorder perpetuating her pattern of headaches (Tr. 354). He prescribed anti-migraine medications, Depakote and Topamax, advised her not to use Zomig on a daily basis, and he planned to consider antidepressant therapy (Tr. 355). In February 2005, Dr. Donovan indicated that he strongly suspected that her headaches had a dysthymic component (Tr.

---

[1] Paxil is prescribed, among other things, for depression and migraine headaches. The Pill Book 962 (Harold M. Silverman, Pharm.D., ed.)(12th ed. 2006). Maxalt is an anti-migraine drug. Id. at 1128.

4

351).

By March 2005, Plaintiff reported to Dr. Donovan that her headaches had decreased to five since her last visit. Her Depakote dose was reduced and she was advised to drink one cup of coffee in the morning to help manage mild headaches, while continuing to use Imitrex or Zomig for "breakthrough headaches" (Tr. 350). At her April 2005 last visit, she reported 7 headaches over the past month, but Dr. Donovan left her medications unchanged, stating that he still believed she had a dysthymic disorder and wanted to see how she stabilized over the next several months (Tr. 349).

Records from her internist, Dr. Poliakova, indicated that in September and October 2002, Plaintiff's headaches were well-controlled on Propanolol and Zomig (Tr. 296, 302). During August and September 2003, Plaintiff's headaches were uncontrolled, her medications were changed, and she was referred to a neurologist (Tr. 288, 290, 293, 295). During January and February 2004, Plaintiff's headaches were well controlled (Tr. 283, 285). Dr. Poliakova's notes indicated that between October 2004 and March 2005, Plaintiff's prophylactic medication was switched to Topamax, but that drug was increasingly ineffective, requiring use of the abortive medication Zomig up to five times per week (Tr. 275-81). Plaintiff was referred to neurology on November 16, 2004 (Tr. 275). On referral, Dr. Donovan added Depakote to the migraine prevention regimen (Tr. 355). Thereafter, Dr. Poliakova noted that Depakote and Topamax controlled plaintiff's migraines (Tr. 271).

In a January 2005 "Pain Questionnaire," Plaintiff wrote that with some help from her husband, she performed household chores, yard work, and cared for her grandchild (Tr. 85). She also drove and shopped. She stated that her migraines began in 1999 and had worsened over the years, that she might go for weeks without a headache, and then have one

5

lasting 7 days straight (Tr. 86). She admitted that medications (Imitrex and Zomig) sometimes relieved her headaches. Id.

At her May 17, 2007 hearing, Plaintiff testified that she was unable to work due to migraines, which occurred 12-17 times per month (Tr. 388). These headaches forced her to stay in a dark room with a cold washcloth over her head, and frequently caused vomiting (Tr. 389). She rated the pain from her average headache as a ten on a ten-point scale, and testified to light sensitivity as well during a headache (Tr. 390).

Also at the hearing, in response to the ALJ's hypothetical questions, the vocational expert identified a number of jobs in the economy which would accommodate plaintiff's residual functional capacity and a moderate level of headache pain (Tr. 394-95).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

6

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

8

Plaintiff's contention in this case is that the ALJ misjudged the severity of her migraine headaches, and erroneously disregarded the findings of her treating physicians when he found those headaches to be adequately controlled by prescribed medications. In support of this argument, plaintiff cites the treatment notes of two neurologists, Drs. Lalonde and Donovan, which document plaintiff's report of the large number of headaches she experienced at various times between 2003 and 2005. For his part, the ALJ found that plaintiff's migraine headache syndrome could have been reasonably expected to produce the symptoms of which she complains, but that her testimony regarding the debilitating severity of these symptoms was not fully credible.[2] (Tr. 19) Without explicitly addressing the frequency with which plaintiff's headaches occur, the ALJ relied on the instances in the medical records where plaintiff's severe headache symptoms were noted to be controlled with the use of certain medications, including Zomig, Maxalt, and Imitrex. Owing to its relative brevity, the entirety of the ALJ's discussion of plaintiff's headaches is set out below:

> The objective medical evidence shows that the claimant has been treated with a number of prescribed medications for complaints of debilitating migraine headaches through April 2005. (Exs. 1F, 2F, 7F, 9F, 10F) In November 2003, Dr. LaLonde told the claimant that, when she had a headache, she needed to take the prescribed medication immediately, rather than two to three hours

---

[2] Plaintiff's testimony at the hearing, as described by the ALJ, was that "she had 12 to 15 migraine headaches per month. She said the headaches would sometimes last for days. She said that she would sometimes have several headaches during a week, or may go a week without one. She said that when she had a headache, she would stay in a dark room with a wet cloth over her face; the pain was at a level of ten on a scale of ten; and she became nauseated. She said that prescribed medications had helped for a period of time, but that the medications eventually became ineffective. She said that her current medications did not cause any side effects." (Tr. 18)

9

> later, as she had been doing. In July 2004, the last time that Ms. Pennington
> appears to have seen Dr. LaLonde, he stated that the claimant had no side
> effects from the medications and that, in general she was "quite pleased with
> the HA (headache) management." (Ex. 7F) Clinical records of primary care
> physician Dr. Poliakova indicate that, prior to March 2005, prescribed
> medications did not consistently prevent claimant from having migraine
> headaches, but that the medications were effective in controlling the
> claimant's headache symptoms. (Ex. 9F) The clinical records of neurologist
> Dr. Donovan, who also treated the claimant for migraine headaches until April
> 2005, correlate with Dr. Poliakova's records. (Ex. 10F)
>
> * * *
>
> The Administrative Law Judge finds the claimant's allegations regarding her
> limitations less than fully credible. While I have no doubt that she has
> experienced some level of pain and discomfort due to her impairments, such
> has not been shown to have produced disabling functional limitations for any
> continuous twelve month period relevant to this decision. Rather, the
> undersigned finds that clinical records indicate that prescribed medications
> adequately controlled the symptoms that she experienced due to migraine
> headaches, as long as she was compliant with taking the medications as
> prescribed. . . .

(Tr. 18, 19)

Notwithstanding plaintiff's argument to the contrary, the ALJ did not subordinate the opinions of her treating neurologists to the assessment of the one-time consultative examiner, Dr. Surber. Dr. Surber's assessment of plaintiff's work-related abilities does not account for the effects of plaintiff's headache pain, but defers consideration of such symptoms to her treating physicians who provide ongoing treatment for this condition. (Tr. 265-66) Plaintiff argues that the notes of her treatment by Drs. Lalonde, Donovan, and Poliakova establish that she would miss several days of work per month on

10

account of debilitating headaches. She cites to Social Security Rulings 96-7p[3] and 96-8p as support for the proposition that her pain would preclude the performance of work on a regular and continuing basis. However, these rulings have not been flouted in this case, as substantial evidence supports the ALJ's lone reason for discrediting plaintiff's allegations. That is, the record reflects that by and large, when plaintiff experienced a headache she deemed severe, she took her "abortive" medication (i.e., Zomig, Maxalt, or Imitrex) and that medication controlled the pain. The ALJ concedes that plaintiff has been prescribed a number of prophylactic medications without any sustained success when it comes to controlling the *frequency* with which she experiences headaches. (E.g., Tr. 275, 277, 281, 288, 290) However, as to the severity of the symptom itself, the medical record clearly shows that plaintiff's migraine pain was not always severe (see Tr. 350-51, recommending a cup of coffee or aspirin for milder headaches; Tr. 127-50, documenting headache occurrence and marking some few as "bad"), and that when it was, she was typically able to control the pain with the use of these abortive medications. (Tr. 281, 285, 288, 292, 349) While there are references in the record to these abortive medications not always being completely effective in controlling the pain (Tr. 290, 352), there is no particular medical evidence to establish the frequency with which plaintiff experienced uncontrollable pain, nor to establish any limiting effects of pain that was "controlled" by medication. Noticeably absent from the record are any medical source statements from plaintiff's treating physicians. In the absence of such statements supporting plaintiff's allegations, and on the record of treatment

---

[3]Plaintiff actually cites Soc. Sec. Rul. 96-6p here, which the undersigned assumes is a typographical error since Ruling 96-6p speaks to the consideration by ALJs of the reports of state agency medical and psychological consultants, whereas Ruling 96-7p speaks to the evaluation of symptoms such as pain, and the assessment of claimant credibility in that regard.

before him which largely contradicts plaintiff's testimony, the ALJ was substantially justified in discounting the credibility of that testimony that plaintiff's headache pain was, on average, "definitely 10" on a scale with "ten being enough to send you to the emergency room and zero being no pain at all" (Tr. 390), and excruciating to the point that she cannot function but has to lie down in a dark room (Tr. 119-20).[4] The undersigned finds no error in the ALJ's resolution of this conflict. Given the vocational expert's testimony that a moderate level of pain would not impact the availability of the jobs he identified (Tr. 396), it appears that the finding of nondisability is supported by substantial evidence.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **DENIED**, and that the decision of the SSA be **AFFIRMED**.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt

---

[4]Although not pertinent to the time frame under consideration here, it is notable that in Dr. Donovan's first run treating plaintiff's migraines, in August 2000, he recorded plaintiff's description of debilitating symptoms -- consistent with her hearing testimony -- when she does *not* take Maxalt; however, Dr. Donovan noted that "[h]eadache pain is generally relieved with Maxalt," and that "[h]er acute migraines have responded to Advil or Maxalt." (Tr. 358) As late as April 11, 2005, Dr. Donovan noted that plaintiff had a migraine the morning of her appointment, "but the use of Imitrex Nasal Spray helped to block this headache" and plaintiff appeared stable. (Tr. 349)

of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 16th day of January, 2009.

          s/ John S. Bryant
          JOHN S. BRYANT
          UNITED STATES MAGISTRATE JUDGE